Okay. I'm going to let you pronounce your name. I probably asked you that once previously and you did it and I'm not going to try again, though, so. Evan Howes Well, thank you, Judge Smith, and may it please the Court, my name is Evan Howes. Basically, pretend the E doesn't exist on the N. I don't exactly know where it came from, but it's there and we just pretend it's not. But so, I'm Evan Howes. I'm here to represent Mr. Darrell Freeze. And, Your Honors, 12 years, the District Court increased my client's sentence by more than 12 years in this case, based entirely on an uncorroborated allegation of decade-old, uncharged conduct by this Mr. Randall Bishak. Judge Smith But it did come down to his credibility, right? Evan Howes No, Your Honor, and I want to be very clear. Well, the answer is yes and no. To be sure, this case is about the credibility of Bishak's story, but this case is not about a credibility determination. The District Court did not have the ability to make a credibility determination because the government did not invite Mr. Bishak to come testify at sentencing. The government didn't even give the District Court the audio of his only recorded statement where he gave life to these allegations other than just making them. So, the District Court didn't have the type of things that, and I think the best way I can explain this, I think, is a case you should be familiar with, the Court is surely familiar with, is Anderson v. City of Bessemer City, North Carolina. It's the Seminole Supreme Court case where the— Judge Smith We've cited it a million times. Evan Howes 648 to be exact. I actually looked a couple times. Judge Smith It's almost a million. Evan Howes Right? And so the Court in that case made very clear that the basis for the extra deference that's afforded to a District Court's credibility determination is that the District Judge has the ability to look at variations in the witness's demeanor and tone of voice and inflection when subjected to questioning. And it's important not— Judge Smith But the other test is whether the District Court's decision is plausible in light of the record as a whole or whether two different versions, whether the District Court's view is plausible and that, in terms of the record as a whole, that can also mean the cold record of documents, court proceedings, and all that sort of thing. It doesn't have to be a live proceeding for the District Court to look at everything that's available. Evan Howes That's absolutely right, Judge Smith. And the final thing I wanted to say about this case is the reason this Court should have a firm and definite conviction that a mistake was made, the other standard announced in Bessemer City, is that the evidence supporting Mr. Bisak's allegation here was unreliable on its face and because the allegation itself was contradicted in numerous ways as to material details by the defense's substantial rebuttal presentation. And it's the rebuttal presentation that makes this case different. And it's those two things. And Your Honor is exactly right. In Bessemer City, the other thing that's important about Bessemer City is that the Court made very clear that there are at least two conditions when it's appropriate for a court of appeals to vacate a factual finding is clearly erroneous, and that's when there's documents or other extrinsic evidence in the record that contradict the factual finding or a witness's story, or when the witness's story is internally inconsistent or so implausible on its face that it shouldn't be credited. And so, again, the Supreme Court used those disjunctively. It could be one or the other. But this case, as we've pointed out in the briefs, we've got at least two of those conditions. We've got contradiction by extrinsic, reliable extrinsic evidence, and we've also got internally inconsistent for Mr. Bischak's story. So if the Court will allow, I'd like to get into the evidence and some specifics of the evidence. The first problem with the evidence supporting Mr. Bischak's allegation in this case is that it was unreliable on its face. And the first place the Court should look is simply at the statement. Remember, at the very first interview where Mr. Bischak made this claim, he didn't give any detail. He simply said, I was abused in the past by two men. One was named Daryl Freese, and he was a school bus driver in Beeville. And as we'll discuss later, those two facts turned out not to be correct. But the point is, that was just a bare allegation. The only time he gave any substance to his allegation was that one February 2017 interview that's discussed at length in the brief. And in that interview, he admitted multiple times. In fact, I think defense counsel said on the record that it was 44 different times where he said, I don't know, I can't remember, or I'm confused about multiple different details that you would expect a person to remember, even ten years after. He was confused about who he was seeing. Because remember, he didn't say he was just with Mr. Freese. He said he was with numerous other men around the exact same period. And he wasn't able to name any of those men, only Mr. Freese. But he expressly stated in his own allegation, I'm confused about the time frames. My memory is fuzzy. Sometimes when I think about it, it's in a dreamlike state. And I'd encourage the Court to look at the chart or the table that I made that spans pages 31 to 32 of the blue brief. And one of the quotes that I think is very important there is, he said, I don't remember. Everything, every time I think about it, it's always different in my mind. Always different. That is a witness saying, every time I think about the thing that I'm talking to you about, it's different in my mind. Now, it's hard for me to imagine a statement by a star witness in any legal sphere that would more undermine the reliability of that statement than confessions that I don't remember, I don't know, and I'm McCready, the only person who did testify at the sentencing hearing here, expressly testified that that's a reason, in his expert opinion, to not credit or to have pause about the reliability of an accusation. So we have, and basically what that comes down to, Your Honors, is Randall Bishak confessed unreliability in his own statement. And if you take that together with the context, the context was also inherently reliable. I mean, again, and I've said, he gave this allegation for the very first time when he was confronted by Army CID and a federal Homeland Security agent in a polygraph exam who asked him if he'd been having sex with children. And of course, during that, so there's two things that are important there. One, he had obviously had a motive to deflect the attention of the agents away from himself onto other people, and he also had a motive to justify his behavior. Because in that interview, he admitted that he was going to places in order to have sex with children, but that he just simply said, it wasn't me, it was Frodsham, my accomplice. And now we later learned that that wasn't true. And so that's the second important thing about the polygraph. And again, this is the government's own evidence that it's submitted in the record. That evidence absolutely establishes that he lied to these federal agents, to Army CID, not once, but twice in the same day. And the way he lied was in a way that downplayed his own culpability. He said, it wasn't me, it was Frodsham. Right? And so we have a witness who says he doesn't remember things, he says he's not sure, he says he's confused, and then we also know that this witness has lied to federal agents about something that is very materially close to what he's talking about here. Right? So those are two things that should, in the normal course, put up red flags in lawyers' ears. Unreliability. How can we credit this simple allegation that was never exposed to the rigors of cross-examination when the witness himself says he doesn't remember and is confused about the very things that he's alleging? So the other piece of the motive that I've noted in the brief is simply that the time that he actually made this February 2017 interview, he was in the process of plea negotiations. He had been indicted for his own terrible crimes, and he was in the process with his lawyer next to him, with the AUSA that was prosecuting him, in the room, making these allegations for the express purpose of seeking a sentencing reduction. So it's another reason not to trust what this individual is saying. And again, I'm not claiming that the defense established here that Bishak was necessarily lying, but all of these things go into the reliability determination. And remember, the only thing the government gave the district court here were third-hand accounts from Agent McCready and this Wilson County Sheriff's Officer that, of their recollection of this allegation. Those agents, McCready and the Wilson County Officer, didn't even attend this February 2017 interview. So nobody in this case that was before the district court, and especially the district court, had an opportunity to observe Mr. Bishak's demeanor, to realize what he was saying. Counsel, I don't expect you to emphasize the government's case here, but there was contrary reasons that the district court had to justify accepting this testimony. The knowledge of Daryl Freese's name, the fact that, indeed, he turns out that he was involved in these sorts of activities as well. The fact that he had FaceTime interaction a few years before, at least a few years after these events occurred. And the other evidence that this made, it happened even if his recollection wasn't, of each individual event, wasn't all that reliable. Now, I must say, I sympathize with you. This is not the way I would want my own sentencing to go, but nonetheless, hearsay, reliance on documents, is part of the accepted evidentiary mix for a sentencing hearing. So what is it that's, I mean, this is extraordinary in a way in that it's not the ordinary, but why isn't this, the corroborative evidence that is here, the things that did match, sufficient for the district court to accept that these events occurred? Judge Southwick, the reason the supposed corroborative evidence wasn't sufficient is because the only thing that was corroborated here were generic details, right? So we don't, there's no disputing in the record that these individuals at least met one time over Facebook, and it wasn't FaceTime, Your Honor, it was simply a chat message on a cell phone. So it was one conversation. That's the only evidence in this entire record that establishes any communication between these two individuals. And what's very important about that, Judge Southwick, is that the government had that evidence and didn't actually put that conversation into the record here. And the reason is because Agent McCready testified there was nothing relevant to the allegation in that conversation. And that's extraordinary. You would think that if there was any basis for suggesting that these individuals had a prior familiarity, and especially if they had had a sexual, a consensual sexual relationship ten years prior, there might have been something like, hey, Randall, it's been a long time, nice to hear from you, or it's been a long time since we've seen each other. But the agent said there was nothing in that conversation that indicated prior familiarity. So we really don't have any corroborating details. We have a person who has admittedly had access to an individual's Facebook account, who knows his name, has alleged something about him that we know from the rebuttal evidence wasn't true, that he wasn't bald, and has said, been able to say his marital status. And those things are entirely consistent, Judge Southwick. I thought that Bischak had reconnected with Freese before the arrest occurred. And that's exactly what I'm discussing, Judge Higginbotham, is Bischak said, I — he said reconnected. But the only evidence we have in the record is that there was a conversation and the agent said if there was something important about that conversation to these allegations, I would have remembered it. But he said very clearly in his testimony, but I don't remember it. Right? And he said there was just small talk. And that's another part of this that — it is the whole record that you have to look to, Judge Southwick. You have to look at the — Well, that was Freese's account, that it was small talk. That's — No, no. That's Agent McCready. Joshua McCready testified this was small talk. And so that it was an innocuous conversation. And he also explicitly testified there was nothing sexual in nature. So we just have one communication over 10 years after an alleged event, and we have a witness who's able to name a person. I can name any — I mean, it's — that's generally accessible information. It's not corroborative of whether or not two individuals met at a certain time in a certain place and actually engaged in a sexual act together. And remember — and I guess I'll have to get into the rebuttal presentation in my rebuttal presentation — but in rebuttal, we presented reliable, extrinsic evidence, the very thing that the Supreme Court talked about in Bessemer City, that contradicted the details of this story, that proved several of the details of the story false. And if you'll allow me, Judge Smith, I'll just emphasize one very quickly. Mr. Bischak said over and over again at the time I had sex with Ms. — Mr. Freeh's character, I — he was a bus driver, a school bus driver in Beeville. Well, the government's own probation officer and the government's evidence itself established that he was not a school bus driver until much later than the actual relevant timeframe here. And not only does that contradict the express statement of the story, but the timeframe that Mr. Freeh's was a school bus driver, it would not have been illegal for him to have consensual sex with Mr. Bischak. Bischak would have been 17 at that time. And so the point is that there's just too much uncertainty in all of this evidence, and I'll get further into that in my rebuttal. I'll bless you. You've saved time for rebuttal. Thank you, Mr. House. Mr. Gould? Good morning, and may it please the Court, Andrew Gould for the United States. The issue in this case is whether the record plausibly supports the district court's finding that the sexual allegations actually occurred. That comes from Mr. Freeh's brief, and he's right. The term is plausibly. It's not strongly. It's not concretely. It's not most likely. It's just plausibly. And that reflects the limited role of an appellate court when reviewing a district court's factual finding at sentencing for clear error. You've heard my friend's very vigorous presentation of all the rebuttal evidence that he presented. But his testimony counted for 10 years. Excuse me, Your Honor? His testimony, the legitimacy of this evidence counts for 10 years in the Senate. Is that correct? That is correct. So it was a five-level enhancement. The treaty was not presented. Ordinarily, you don't present those kind of witnesses in sentencing hearings, of course. But if it weren't 10 years of the Senate's rest on an agent, why wasn't he there? I can't answer that, Your Honor. But what I can say is that, obviously, it's prosecutorial discretion about which witnesses would and would not testify. Would I have done it differently standing here before you today? Maybe yes, maybe no. But I'm here with the record that we have. He did not testify. Was he available? Come again? Was he available? I would only be speculating. I would speculate that he probably was available because he was serving his own — he was incarcerated. So I'm — I would speculate that he could have been ridded over. But I can't tell you for certain standing here. What I can say is that this Court's precedent is clear that even uncorroborated hearsay evidence may be sufficiently reliable for sentencing. And like I said, you've heard my friend's case as to the evidence that supported his version of events. Let me tell you the three factors that support the government's version. First, the level of detail in the allegations. Second, the surrounding facts that lend reliability. And third, the implausibility of Mr. B — excuse me, Mr. Freeze's version of events that the district court would have had to believe. Turning to them in order, as this Court has held in Robinson and Prevett, a witness's level of detail in his allegations can support their reliability at sentencing. Mr. Bieshek was very detailed. And I want to go through what he was detailed in his allegations. He identified Mr. Freeze not once, not twice, but three separate times. And he did so initially before he was arrested in his own case. In fact, he did so one — almost one and a half years before Mr. Freeze would be caught up in his own criminal conduct. He was graphic as to the types and the locations of the sex that occurred. And I'm going to get into them because, again, this is about the level of detail. There were two incidents. There was oral and anal sex. The oral sex, Mr. Bieshek said that it took place at his home in a garage that was converted into a living room. He remembered that Mr. Freeze wanted him to swallow his ejaculate, but he would not do so. As to the anal sex, he remembered that it took place in a wooded vacant lot near his home, that he was bent over a car, and that it hurt. He, of course, remembered that they met on Silver Daddies and went sometime when he was 14 or 15 before entering high school. Now, my friend references how Mr. Bieshek said during that interview how he was hazy and fuzzy during this. That's true. But we would encourage the court not just to look at my friend's brief, but actually look at the transcript and the questions and answers. What was he hazy and fuzzy about? He wasn't hazy or fuzzy about whether he engaged in sexual acts with Mr. Freeze, but about collateral details, the exact times, the exact dates, whether Mr. Freeze used condoms and lubricant, whether it was his first experience with oral sex, whether this was his first time with a, quote, older gentleman. Whether or not he remembered those details doesn't take away from the central allegations, the oral and the anal sex. And on that, Your Honors, at ROA 199 and 200, Agent McCready testified Mr. Bieshek never backtracked on those. That's the key. And we think actually based on that level of detail alone, that would be a sufficient basis for the district court to find them reliable. But there's more. There are the surrounding facts. And in Prevet, that, Prevet talks about how the surrounding facts can add consistency to a hearsay allegations, as they did in this case. Mr. Bieshek remembered that Mr. Freeze's Silver Daddy's username included the words fire and heat. That correlates with Mr. Freeze's, one of his pursued vocations as a volunteer firefighter. But Mr. Bieshek didn't know he was a firefighter. He identified him as a bus driver. And on that point, my friend and I are just going to have to agree to disagree on this point and direct you to the record. If you look to the ROA citations that are provided in the response brief as well as in the reply brief, and actually I think you can find them all at the reply brief on page 12, you're never going to see a definitive statement where Mr. Bieshek says, yes, he was a school driver when we had sex. It was just that he was a school bus driver. And if you go to ROA 305, this is where Agent McCready is reaching out to the local sheriff's office to tell them of this report. He says that Mr. Freeze was a bus driver. Not that he was a bus driver 10 to 12 years ago, just that he was a bus driver, full stop. And the district court even inquired about this, and you can see that at ROA 220 and 221. It wanted to know, well, was this in the context? The prosecutor said, may I confer with the agent, which was Agent McCready. And he did so, and he says, no, Mr. — he wasn't identifying him as a bus driver at that time. Now, in the reply brief, they say, well, that's not evidence. That's just a trial prosecutor's assertion. Maybe so, but, I mean, it was in direct response to what the district court had asked, and you can read that for yourselves. Regardless of whether or not he was a bus driver, again, he didn't know he was a firefighter or that he pursued that vocation, and yet he identified his username as such. He knew he was married at one point and had one child. Now, Mr. Fries says, well, anybody who's on Facebook could have known that. True. That's one way you could have looked at it, but the district court could have looked at it the other way, that this was another thing that added consistency to his statements. He knew that — he thought that he was in his mid-to-late 40s at the time of the encounters. That matches with Mr. Fries' 1962 birth year. He remembered that Mr. Fries complained about the driving distance between B-Ville and La Vernia, which is where Mr. Bischak lived at the time. And Mr. Fries says, well, I wasn't from B-Ville. I lived in Pedestrian the relevant time. That's true, except for he worked in B-Ville. So it's plausible that he could have been driving from B-Ville and complaining about that, and they're in the same county. Forty miles apart. Yes. I think it's 15 to 20 miles apart was what was on the record, but yes. The same county. The same county, yes, sir. And he also testified that — excuse me, Mr. Bischak remembered that he was — Mr. Fries was bald. And again, Mr. Fries takes great issue with this. He says, I'm not bald. You have the picture of him in the PSR, so you can judge for yourself. It's true. He's not completely bald. In fact, as came out during one of Mr. Fries's own witness testimony, it's one of his defense investigators who met with his ex-wife. And she didn't say, oh, no, no, no, no, he's not bald. She just described him as not totally bald, that he had short hair and a receding hairline. So, yes, maybe he wasn't completely bald, but it's still generally consistent. And as to the Facebook conversation, it's true that the actual contents of that conversation isn't in the record, but it was Agent McCready who testified that it contained small talk. But you would have expected, if they had been meeting for the first time, there to be some indication of that. And there wasn't. It was just small talk. Well, Counselor, that concerns me a bit. Isn't that all we know, that it was small talk? We don't know if there's any indication or not, sort of a speculation from your friend on the other side, that if there had been a prior connection, the way it would have started is, hey, it's been a long time. And if there wasn't anything like that, that's at least suggestive of no prior connection. We don't know anything about it other than a small talk. That's correct, Your Honor. So I think you're going a bit far to get anything out of that, other than the government wasn't thinking it was helpful to introduce it. I can't tell you again what the prosecutor was thinking. I do think that if there was more to it, some type of introduction, it would have come out. But again, that's not in the record, and so I would be speculating. So I think you're right, Judge Southwick, in that it's probably at — it might be neutral. We just view it differently. But, Counsel, one of the biggest concerns about this record is all that's not there, that it is hearsay, that it's McReady saying what was said, that it's somebody testifying or saying what Facebook was. And this is not a very helpful record for us to be endorsing for AUSA's to be doing in the future. I agree that in preparing for this and standing before you, this isn't the record I would like. I agree that just to talk about the credibility determination, to be clear what the government's saying, it is true that a witness who has testified before the district court or, I suppose, as my friend says, if they had listened to the audio of the allegation, that gets stronger deference. And that did not occur here. So we don't get that deference. But it's still a credibility determination in the sense of who to believe. Do you believe Mr. Bishak's allegations or do you believe Mr. Freese? Well, it's also — I mean, if there are two competing views of the evidence, perhaps we would take one view, but the question is whether the view of the district court is more than one plausible version of facts. Absolutely, Your Honor. And as this Court has held, even if it were the trier fact, it would have found differently. That is not a sufficient basis for reversal where it is plausible. And again — Or to put it another way, in order to reverse here, we would have to determine that what Jack found is implausible. Correct. Yes, I agree. And we don't think it was implausible, again, based on the level of detail, the surrounding facts, and third, the implausibility. And let me get into that. Because Mr. Freese's version of events is essentially that he was falsely accused, that you would have to credit — the district court, Judge Jack, would have had to credit a number of assumptions. First, she would have had to assume that Mr. Bishak would falsely accuse a man who he had just met from a different State. Now, even if that's — let's say it's a safe assumption because he knows that he's under criminal investigation, there are more assumptions. That he then chooses a man and accuses him of engaging in sexual activity involving children because he was a minor at the time. And that person actually, in fact, happened to do that, engage in that behavior. Third, that he would do so a year and a half before that man would, in fact, be accused by authorities of doing that. And fourth, and perhaps above all, that Mr. Bishak would choose to falsely implicate Mr. Freese while also truthfully implicating another of — a number of other people, which, as the district court heard, led to their successful arrests and convictions. You can see this at 214 and 215 and 244 and 245 of the record. So based on all of these assumptions that the district court would have to make, based, again, on the level of detail in the allegations and the surrounding facts, the district court could plausibly credit Mr. Bishak's allegations and could find them reliable. Standing here today, would it have been better had Mr. Bishak himself testified? Maybe so. I don't know what he would have — you know, I believe he would have been consistent with this, but I don't have that record before me. But the question, again, on appeal is, based on this record, was the district court's finding plausible? And we think the answer is yes. And for that reason, because the district court did not clearly err in crediting Mr. Bishak's allegations and finding them reliable, it properly applied the pattern enhancement under Section 4B1.5b1. If the court has not no further questions, we ask that you affirm the judgment of the district court. All right. Thank you, Mr. Bishak. Thank you. As you save time for rebuttal. Thank you, Judge Smith. I realize that I'm starting from behind here, so I'm going to try to make up some ground. Oh, don't make assumptions. No, I understand. One thing I do want to say is, as to the bus driver stuff, the only thing I will do is point you to ROA 302. That's Agent McCready's first contemporaneous report when he first made the allegation. It says, Bishak stated that he had been molested by two individuals in Texas when he was a child. The two individuals were identified by Bishak as Daryl Freese of Beeville, Texas, who was a school bus driver, and Martin Lambert of San Antonio, who was a substitute teacher. I think the only reasonable reading of that is that he was identifying the status of the person at the time that he was abused. But the thing is, is we don't know, because we just don't know from the record here. Mr. Gould is my friend, and I do respect him, but we do disagree on this case. Judge Higginbotham, the reason that the government didn't present Randall Bishak is because he would have been The district judge would have seen him clam up when he was asked, why did you say you didn't know, don't remember, all of these things? Why were you only able to name Daryl Freese, even though you said that you were with numerous other men, but weren't able to name any of those? Why did you name this Martin Lambert guy, but then no evidence whatsoever checked out about that accusation? That's the reason we don't have it, because there isn't that. The government came with what they had, and what we're saying is what they have is not enough to subject an individual to 12 extra years in prison based on a preponderance of the evidence standard. And to be clear, Your Honors, this is not a choice between two versions. Mr. Gould refers to Bishak's version and Mr. Freese's version. I have no version of the events. I'm simply asking you to look at Bishak's version. We're not asking you to re-weigh the evidence. I couldn't ask you as the appellate court to do that. I'm only asking you to look at the face of the allegation and determine whether what was said or what an officer heard was said is sufficient to get you over that hump to allow you to accept 12 extra years in prison. I would suggest that it's a close cause to whether or not there's even probable cause to effectuate an arrest of Mr. Freese based on this allegation alone, without any corroborating data as to an actual contact between these two men prior in the past. But if it's a close question as to probable cause, it's certainly not enough to meet the preponderance of the evidence standard. But I'm not, this is not a case where there's one story of an evidence by witness. One witness says one thing is X happened and another witness says Y happened and the district judge was just determining between those. We're simply looking at a single allegation and looking at whether or not that was supported by reliable evidence. And the government, it emphasizes that he identified Mr. Freese three times. Well, he just said his name three times. And if he knew this man from meeting him on the internet, we don't know when they met. I'm not suggesting the first time they met was Facebook. We don't know. We don't know from this record. And that's the problem. The government didn't give us enough information to know. And it's not plausible to determine that everything Mr. Bishak said was true. Think about, the government emphasizes detail. Well, it's not surprising that Mr. Bishak would be able to describe in detail sexual acts with a child because unfortunately he admitted to doing that repeatedly and systematically with the individual who was his accomplice in his own crimes. So it is not strange that he, it doesn't give him advanced credibility that he was able to describe these gross things in detail given that he had admitted to doing that, to actually victimizing people in that way And if you have hearsay, you need some level of corroboration. It's true you have relied on uncorroborated evidence, hearsay evidence before. But when you look at the verification here, there simply was none of the details that could have been verified. This man affirmatively claimed that a certain website was used. There is no evidence in this record that Bishak or Mr. Freese ever used this website. And, Your Honors, the last thing I can leave you with is if you are inclined to find that it was plausible in light of this record, which I really do think that it is not based on this record, but if you are inclined, it would be very helpful if you would at least recognize that this sentence would be substantively unreasonable without this enhancement because it really is the driving force behind a 12-year increase to Mr. Freese's sentence. And I think our trial counsel said it best in this case at sentencing when he said we should do better. And it's our position that the government was required to do better and that this Court should reverse this enhancement. And with that, I'll submit the case. Thank you, Mr. Howes. Your case is under submission. We'll take a short recess before hearing the final two cases.